UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JULIUS MARSHALL, | ) | CASE NO.  4:10 CV2403 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.T. SHARTLE, et al. | ) | |
| | ) | |
| Respondents. | ) | |

Before the court is *pro se* petitioner Julius Marshall's above-captioned petition pursuant to

28 U.S.C. § 2241.  Marshall is incarcerated at the Federal Correctional Institution in Elkton, Ohio

(F.C.I. Elkton).  He filed this action against F.C.I. Elkton Warden J. T. Shartle and United States

Attorney General Eric Holder.  Marshall asserts he is entitled to credit against his federal sentence

based on the doctrine of "continuous execution."

*Background*

Marshall was arrested by Suffolk County police in the Commonwealth of Virginia on March

3, 2003.[1]  He was charged with possession with intent to distribute cocaine.  *See Commonwealth v.*

*Marshall*, No. CR020390.  At the time of his arrest, Marshall was still on probation for a previous

offense in the Commonwealth.

An indictment against Marshall was filed in the United States District Court for the Eastern

District of Virginia on June 9, 2003.  *See United States v. Marshall*, No. 2:03-cr-0076 (E.D. Va. June

---

[1]While this fact is repeatedly raised in the Bureau of Prisons' (BOP) responses to
Petitioner's administrative appeal, he omits it from his petition as well as his request for
administrative relief.

9, 2003).  A warrant for Marshall's arrest was issued and executed on July 7, 2003, and when he appeared in federal court he was detained.  After waiving a detention hearing, Marshall was remanded to the custody of United States Marshal pending trial.  *Id*.  He subsequently entered a guilty plea to the charges on July 22, 2003.

A Petition and Order for Writ of Habeas Corpus Ad Prosecundum was issued by the Commonwealth on July 29, 2003, directing the United States Marshal to transport Marshall to the Circuit Court of the City of Suffolk, Virginia for sentencing. The Commonwealth dismissed its cocaine possession charges against Marshall, but his probation violation charges remained pending. On September 3, 2003, the Commonwealth imposed a three year sentence against Marshall for violating the conditions of his probation.  He was returned to federal authorities after the Commonwealth sentence was imposed.

On November 3, 2003, the District Court of Virginia ordered Marshall to serve 132 months consecutive to any previously imposed or pending state sentence.[2]   On November 19, 2003, he was inadvertently designated to a federal correctional institution.  The federal facility received Marshall on December 10, 2003, where he remained until March 10, 2004.  On that date, he was transferred to a state facility to complete the sentence imposed by the Commonwealth with a federal detainer lodged against him.  When Marshall completed the full term of his state sentence on October 11, 2005, he was released under the detainer to federal authorities and his consecutive federal sentence commenced.

On or about June 14, 2008, Marshall learned  he was not receiving credit against his federal

_____

[2]A Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense 18 U.S.C. § 3582 was filed in the District Court by Marshall on May 21, 2008.  After briefing, the court issued an Order on July 3, 2008 reducing Marshall's sentence to 120 months.

sentence for the period in which he was held by federal authorities from July 7, 2003 until the present.  A year later, he initiated the administrative appeals process at F.C.I. Elkton.  Marshall also suggested his request could be remedied by a nunc pro tunc designation to a state facility as his place of incarceration pursuant to BOP Program Statement 5160.05.  The Warden denied his jail credit request on October 14, 2009, but promised to pursue his nunc pro tunc request through the Designation and Sentence Computation Center (DSCC).

Marshall's subsequent appeal to Regional Director J. L. Norwood was denied.  Norwood explained he was not entitled to additional federal credit because the Commonwealth awarded Marshall jail credit for "all time spent in confinement awaiting trial."  (Letter from Norwood to Marshall of 11/17/09.)  Marshall then appealed to the National Inmate Appeals Administrator, Harrell Watts.  Watts denied the appeal on April 5, 2010,  explaining that the Commonwealth provided Marshall credit against his state sentence from March 4, 2003 until December 5, 2003.  Because 18 U.S.C. §3585(b) does not permit the BOP to award a prisoner with jail credit more than once for the same period, he explained Marshall was not entitled to federal credit for that same span of time.  He noted that Marshall's Sentencing Computation Data was updated in January 2010 to reflect those credits.[3]  Marshall is projected to be released from prison on May 5, 2014.  Having fully exhausted his administrative remedies, the matter is now properly before this court.  See Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir. 1981).

*Analysis*

Marshall argues he is entitled to additional credit against his federal sentence because he

---

[3]A copy of that Data sheet is attached to the petition and indicates the BOP awarded jail credit to Mr.  Marshall's federal sentence from December 6, 2003 until March 3, 2004.

never left federal custody after his arrest in July 2003.  Based on this belief, he claims his federal sentence should be credited from his arrest until October 11, 2005, the date on which the BOP states his federal sentence commenced.  The credit Marshall seeks includes the time in which federal authorities temporarily "surrendered him to the state."  (Pet. at 7.)

Citing *Ponzi v. Fessenden*, 258 U.S. 254 (1922), Marshall claims the federal government was the first sovereignty to take him into custody and is thus "entitled to custody until it has exhausted its remedy."  He reasons he has been in exclusive federal custody ever since his arrest by federal authorities on July 7, 2003.  Once he was received in federal custody, Marshall argues, the United States was estopped from claiming he was ever in the custody of the Commonwealth of Virginia. As support, he notes the Commonwealth Judge acknowledged he was in federal custody by issuance of a writ of habeas corpus ad prosequendum to the U.S. Marshal, which stated: "It appearing to the Court that Julius J. Marshall is currently in Federal custody, . . . ". (*Commonwealth v. Marshall*, No. CR02000390-01, Ord. of 7/29/03.)

Without any basis in law or fact, Marshall states he was sent to a federal prison on December 10, 2003 to begin service of his federal sentence.  Therefore, when he was subsequently transferred to a Virginia Commonwealth facility on March 10, 2004, he argues the BOP was acting in contravention of the law.  Relying on *United States v. Croft*, 450 F. 2d 1094 (6th Cir. 1971) and *Smith v. Swope*, 91 F.2d 260 (9th Cir. 1937), he claims the BOP exceeded the scope of its authority by "interrupting" the service of his federal sentence.  He believes the BOP was mandated to grant federal sentence credit from the date he was first taken into exclusive federal custody, July 7, 2003, until his release from a Virginia Commonwealth prison on October 11, 2005.

4

*Initial Review*

This matter is before the court for initial screening. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002).  At this stage, allegations in the petition are taken as true and liberally construed in a petitioner's favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  As Marshall is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).  For the reasons set forth below, the petition lacks merit.

*28 U.S.C. § 2241*

It is the responsibility of the Attorney General, through the BOP, to administer the sentence imposed by a district court.  *See* 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed").  To fulfill this duty, the BOP must know how much of the sentence the offender has left to serve.  Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001)("Power to grant credit for time served lies solely with Attorney General and Bureau of Prisons")

The relevant statute provides:

 A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--

 (1) as a result of the offense for which the sentence was imposed;  or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence.*

18 U.S.C.§ 3585(b)(emphasis added).  Marshall asserts the BOP must award him credit because he has been in official and exclusive federal detention since federal authorities arrested him on July 7, 2003.

Contrary to the declarations in his petition, Marshall was not in exclusive federal custody after his arrest by federal authorities on July 7, 2003.   At the time he was arrested by federal authorities, Marshall had already been arrested and released on bail by the Commonwealth of Virginia for pending state drug charges and a probation violation.  It is this key fact that Marshall consistently omits from both his argument and petition, and which undermines his claim.

While Marshall's arguments suggests his is aware of the following axiom of law, he has misapplied the concept to his case:

> Where a State court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted: . . . It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is-unless there is some provision to the contrary-exclusive in effect until it has wrought its function.

*Taylor v. Taintor*, 16 Wall. 366, 370, 21 L.Ed. 287 (1872).  Thus, when the Commonwealth of Virginia arrested and detained Marshall in March 2003, it was the first tribunal to take jurisdiction over him.  His subsequent release on bail did not divest the Commonwealth court of its inherent power to deal with him as the accused, who is still constructively in the custody of the law.  *Id.*  As the Supreme Court explained in *Taylor*:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever

6

> they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent.

*Id.* at 371.  The fact that Marshall was physically held by federal authorities did extinguish the Commonwealth's status as first sovereign.  This status permitted the Commonwealth to award Marshall credit from the date it arrested him on March 3, 2003, until he was mistakenly sent to a federal prison facility on December 5, 2003.  From December 6, 2003 until the date Marshall was removed from the federal facility in March 2004, federal authorities credited his federal sentence. Once Marshall was properly placed in a Commonwealth prison, he remained there to complete service on the three year sentence imposed by that court.

Marshall's reliance on *Croft* to suggest the BOP violated the court's directive when it refused to credit his federal sentence for the period in which he served his Commonwealth sentence is misplaced.  One critical distinction between *Croft* and the case at bar is that the Eastern District Court of Virginia directed Marshall's sentence run consecutively to his Commonwealth sentence. *Croft* involved a challenge to the BOP's execution of a court order directing the prisoner to serve "concurrent" state and federal sentences.  In the present case, the BOP has complied with the District Court's order.  To the extent Marshall was entitled to any credit against his federal sentence, the BOP has applied all the credit to which he is entitled under § 3585.  The statute prohibits the duplicate application of credit against both state and federal sentences.  Following the time line from Marshall's March 3, 2003 arrest by the Commonwealth, he was awarded pre-custody credit from that date until he was inadvertently imprisoned in a federal facility.  From that period until his release to state prison, the BOP provided jail credit against Marshall's federal sentence.  To comply with the District Court's Order to run its sentence consecutively to the Commonwealth's sentence, the BOP

7

could not commence Marshall's federal sentence until his sentence for the Commonwealth expired on October 11, 2005.

A prison term "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily *to commence service of sentence* at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a)(emphasis added). After. Marshall's federal sentence was imposed, he was still in the primary custody of the Commonwealth. This is evidenced by the fact that the Commonwealth credited his sentence for that entire period. His inadvertent assignment to a federal prison for approximately three months did not commence his federal sentence. Instead, he received federal sentence credit for that period, and was returned to the Commonwealth to serve that sentence to completion. Marshall is not entitled to federal sentence credit for time he spent in state custody, because the time he spent in state custody was in service to his state sentence. *See* 18 U.S.C. § 3585(b)(only entitled to credit toward the service of a term of imprisonment "that has not been credited against another sentence").

Based on these facts, Marshall was provided all of the credit to which he is entitled under § 3585(b). The fact that the Commonwealth awarded him sentencing credit from the date it arrested him until he was inadvertently sent to a federal prison, reveals he was not in *exclusive* federal custody during the period for which he seeks federal sentence credit. Moreover, the BOP awarded him §3585 credit against his federal sentence for the December 2003 until March 2004 period Marshall was incorrectly placed in a federal facility. His release from a federal prison to a state facility allowed him to complete his state sentence from March 2004 until October 2005. Because the federal court directed his sentence run consecutively to his state sentence, the detainer lodged by the U.S. Marshal directed the BOP to take Marshall into exclusive federal custody once his state

8

sentence expired.  Marshall is not entitled to additional jail credit under § 3585.

*Conclusion*

Based on the foregoing, the petition for writ of habeas corpus is dismissed pursuant to 28 U.S.C. § 2243.  The request to proceed *in forma pauperis* is granted.  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Date: March 14, 2011                           */s/ John R. Adams*
                                               JOHN R. ADAMS
                                               UNITED STATES DISTRICT JUDGE